EDWARD S. SMITH, Circuit Judge.
 

 In this case resulting from the removal and subsequent reinstatement of Ferdinand Oliveira, a federal civilian employee, to his position as a warehouseman at the Homestead Air Force Base, the United States Claims Court granted attorney fees under the Equal Access to Justice Act (EAJA),
 
 [1]
 
 but denied attorney fees under the Back Pay Act.
 
 [2]
 
 We affirm in part, reverse in part, and remand.
 

 I.
 
 Issues
 

 Two principal issues are presented on appeal: First, whether the Claims Court erred in holding that the Back Pay Act, as amended by the Civil Service Reform Act of 1978 (CSRA), was not available to Oli-veira as grounds to support an award of attorney fees; and, second, whether the Claims Court erred in its computation of attorney fees and legal expenses awarded to Oliveira pursuant to the EAJA.
 

 
 *737
 
 II.
 
 Background,
 

 This appeal grows out of an action originally brought by Oliveira seeking reinstatement with back pay to his position with the Department of the Air Force.
 
 [3]
 
 Oliveira, a warehouseman at the Homestead Air Force Base in Florida from July 27, 1966, was removed from his position by his supervisor on June 9, 1978, for alleged insubordination. On September 27,1978, pursuant to a request by Oliveira, the Federal Employee Appeals Authority (FEAA) of the former Civil Service Commission held a hearing on Oliveira’s removal from Government service. On November 27, 1978, the FEAA affirmed Oliveira’s removal from his warehouseman position at Homestead.
 

 On February 20, 1980, Oliveira filed an action in the United States District Court for the Southern District of Florida against the United States alleging that his removal was a result of discriminatory treatment by his supervisor and seeking both back pay and reinstatement to his position at Homestead as a warehouseman. Oliveira, claiming that jurisdiction rested with the district court pursuant to 28 U.S.C. § 1346, attacked under both the Administrative Procedure Act
 
 [4]
 
 and the United States Constitution the FEAA decision affirming his removal. On November 18, 1982, the district court entered judgment for the United States concluding that the determination of the FEAA sustaining Oliveira’s removal from his Government position was not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence.
 
 [5]
 

 Oliveira appealed the district court’s decision to the United States Court of Appeals for the Eleventh Circuit. At oral argument, the United States raised the issue whether, in view of the Federal Courts Improvement Act of 1982, the Eleventh Circuit had jurisdiction over Oliveira’s appeal from the district court. The Eleventh Circuit, recognizing that jurisdiction over the appeal rested with the Federal Circuit and not with itself, transferred the appeal to the Federal Circuit pursuant to 28 U.S.C. § 1631.
 
 [6]
 

 In the appeal before us, the question was raised whether jurisdiction over the case properly was with the district court or with the Claims Court. Although both the district court and the Claims Court had jurisdiction over Oliveira’s claim for equitable relief, i.e., reinstatement of Oliveira to his warehouseman position, the Claims Court had exclusive jurisdiction over Oliveira’s claim for monetary relief, i.e., back pay. Neither the law nor practical purpose provided us with a basis for bifurcating Oli-veira’s money and equitable claims between the Claims Court and the district court, respectively. We held that jurisdiction rested with the Claims Court, reasoning that the Claims Court was the exclusive Tucker Act forum where the relief sought by Oliveira, back pay exceeding $10,000 and reinstatement to his position as a warehouseman, is fully available.
 
 [7]
 
 Accordingly, we remanded this case to the district court with instructions to vacate its judgment and to transfer the case, without prejudice and in the interest of justice, to the Claims Court. In addition, because we determined that the FEAA may have erred in its original opinion by not allowing Oliveira full fact-finding concerning his claim grounded on his first and fifth amendment rights, Oliveira’s request for a trial de novo was granted.
 

 On April 25, 1985, Oliveira filed his complaint in the Claims Court alleging that he was removed from his warehouseman position at Homestead as a result of his attempts to exercise his freedoms under the Constitution. Oliveira sought both to be
 
 *738
 
 reinstated to his position and to be compensated with back pay. On June 2, 1986, the parties to the action stipulated to an entry of judgment in favor of Oliveira. Pursuant to the terms of this agreement, Oliveira was reinstated to his former position at Homestead and received back pay. On June 30,1986, Oliveira filed a motion in the Claims Court requesting attorney fees and legal expenses both under the Back Pay Act and under the EAJA to reimburse him for his efforts in pursuing his cause of action.
 

 The Claims Court determined that Oli-veira could not use the Back Pay Act, as amended by the CSRA to provide for attorney fees, as a basis upon which to recover attorney fees. The Claims Court held that because Oliveira’s claim for back pay and reinstatement was pending on January 11, 1979, the effective date of the CSRA, the Savings Provision of the CSRA precluded Oliveira from availing himself of the Back Pay Act provision allowing the recovery of attorney fees.
 

 The Claims Court, however, did determine that the EAJA was available to Oli-veira as a basis upon which to recover attorney fees and legal expenses. The Claims Court concluded, however, that Oli-veira was not entitled to recover attorney fees and legal expenses incurred either in the district court or in the Eleventh Circuit since such an award would be unreasonable in view of the lack of jurisdiction on the part of these forums. In addition, the Claims Court, although it awarded attorney fees for representation subsequent to the transfer of Oliviera’s case by the Eleventh Circuit to this court, concluded that recovery could not be awarded for any of the following legal expenses incurred by Oli-veira: photocopying; printing and binding of briefs; use of telephone, postal, Federal Express, and Express Mail services; gaining admission to the Bars of the Claims Court and the Federal Circuit; and in securing certificates of good standing in the courts just mentioned. The Claims Court characterized these expenses as expenses that ordinarily arise in the course of providing legal services and concluded that the EAJA did not allow the recovery of such expenses.
 

 Not satisfied with the Claims Court judgment, Oliveira appealed to us. For the reasons set out below, we hold that the Claims Court correctly interpreted the Back Pay Act, as amended by the CSRA, as not providing for an award of attorney fees to Oliveira. In addition, we hold that the Claims Court did not abuse its discretion in its application of the EAJA to this case in not awarding Oliveira attorney fees and legal expenses for his litigation before the district court and the Eleventh Circuit. However, we must reverse the decision by the Claims Court not to award legal expenses to Oliveira and remand because the Claims Court committed an error of law by interpreting the EAJA as not allowing the recovery of expenses that ordinarily arise in the course of providing legal services.
 

 III.
 
 Analysis
 

 A.
 
 Attorney Fees Under the Back Pay Act.
 

 The Back Pay Act,
 
 [8]
 
 as amended by section 702 of the CSRA to provide for the recovery of attorney fees, includes the following provision allowing recovery of attorney fees, but not other expenses, by an agency employee in certain circumstances:
 

 (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
 

 (A) is entitled, on correction of the personnel action, to receive for the pe
 
 *739
 
 riod for which the personnel action was in effect—
 

 ******
 

 (ii) reasonable attorney fees related to the personnel action * * *[.]
 

 The CSRA, which became effective on January 11, 1979, included the following Savings Provision:
 
 [9]
 

 (b) No provision of this Act * * * shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.
 

 The Savings Provision, if applicable, effectually denies the litigant the opportunity to avail himself of the attorney fees provision of the Back Pay Act, which attorney fees provision was added to the Back Pay Act by the CSRA amendments of 1978.
 

 This court announced in
 
 Wilson v. Turn
 
 age
 
 [10]
 
 that, for the purpose of applying the Savings Provision, we are governed by the regulation promulgated by the Merit Systems Protection Board (MSPB) implementing and construing the Savings Provision. The MSPB regulation provides in pertinent part:
 
 [11]
 

 (b)
 
 Administrative proceedings and appeals therefrom.
 
 No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. “Pending” is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action.
 

 In the proceeding below, the Claims Court determined that the Savings Provision was applicable to prevent Oliveira from availing himself of the Back Pay Act, as amended by the CSRA to provide for the recovery of attorney fees. As grounds for its decision, the Claims Court found that, although Oliveira had received a final agency decision from the FEAA prior to January 11, 1979, the administrative proceeding was still subject to judicial review on January 11, 1979, the effective date of the CSRA. Contrary to Oliveira’s assertion that the administrative proceeding regarding his removal from Homestead could not be pending on January 11, 1979, because the FEAA reached its final decision on November 27, 1978, the Claims Court concluded that, in view of our case law adopting the MSPB regulation construing the Savings Provision, Oliveira, for purposes of the Savings Provision, had an administrative proceeding pending on January 11, 1979. As a result of this conclusion, the Claims Court determined that the Back Pay Act, as amended by the CSRA to provide for the recovery of attorney fees, was not available to Oliveira. We must agree.
 

 An administrative proceeding is considered “pending,” for purposes of the Savings Provision of the CSRA, even if the administrative agency has reached a final decision on the action prior to January 11, 1979, provided that the administrative proceeding was subject to judicial review on January 11, 1979, the effective date of the CSRA. We need go no further than the plain language of the MSPB regulation, which regulation was adopted by us in
 
 Wilson
 
 as governing our interpretation of the Savings Provision, to establish support for this holding.
 

 Oliveira, on appeal, argues that the Savings Provision of the CSRA should not be applied in this case to deny recovery of attorney fees pursuant to the CSRA. First, Oliveira asserts that his administrative proceeding could not be “pending” on January 11, 1979, as such language is used
 
 *740
 
 in the Savings Provision of the CSRA. As grounds for this assertion, Oliveira directs our attention to the language of the FEAA’s final determination stating that if Oliveira was not satisfied with the FEAA’s decision, he was authorized by section 717(c) of the Civil Rights Act of 1964, as amended, to file a civil action in the appropriate district court within 30 calendar days of receipt of the FEAA decision. Oliveira reasons that, because no appeal from the FEAA decision was taken within the 30-day time period and because the 30-day time period expired prior to January 11, 1979, his administrative proceeding could no longer be “pending” on January 11, 1979, within the meaning of the CSRA Savings Provision. We disagree.
 

 The MSPB regulation construing the Savings Provision considers an administrative proceeding to be “pending” at the effective date of the CSRA if the administrative proceeding was subject to judicial review on January 11, 1979. Although Oli-veira may have had only 30 days in which to seek judicial review in the district court under the Civil Rights Act of 1964, as amended, of the FEAA’s final determination affirming the administrative proceeding resulting in Oliveira’s removal, Oliveira was not subject to this specific time constraint in seeking judicial review by the Claims Court of the FEAA’s final determination.
 

 The Claims Court’s review of a final administrative determination by the FEAA
 
 [12]
 
 is subject to the statute of limitations contained in the Tucker Act.
 
 [13]
 
 It is true that, although the Tucker Act, as an element of jurisdiction, establishes a 6-year statute of limitations over every claim which may be brought in the Claims Court, the equitable doctrine of laches may be applied apart from, and irrespective of, this jurisdictional requirement, and laches may operate as a bar to recovery where the delay in asserting the claim results in injury or prejudice to the adverse party.
 
 [14]
 
 A finding of laches, based on the totality of the circumstances in each case, is a matter within the trial court’s discretion. Nonetheless, litigation delays ranging from 11 months to 4 years 5 months have provided sufficient grounds upon which the doctrine of laches has been invoked to bar consideration on the merits of a claim.
 
 [15]
 

 Here, the Claims Court did not reach the issue of laches because both parties, prior to trial, stipulated to an entry of judgment on the merits in favor of Oliveira. Even if laches had been available to the Government in a trial before the Claims Court, the doctrine of laches would have been an affirmative defense, the issue of which could only have been resolved after the agency proceedings were under review by the Claims Court. Therefore, notwithstanding the potential effect of a plea of laches, the 6-year statute of limitations had not run, and judicial review of the FEAA’s final determination was available in the Claims Court on January 11, 1979. Accordingly, we hold that the Claims Court did not err in applying the Savings Provision to deny Oli-veira recovery of attorney fees under the Back Pay Act, as amended by the CSRA.
 

 Second, asserting that his action in the district court was based directly on the first amendment of the Constitution and was independent of the CSRA, Oliveira contends that where a claim is brought independent of the CSRA, the Savings Provision of the CSRA cannot be applied to deny a motion for attorney fees. Oliveira’s contention simply is not persuasive.
 

 
 *741
 
 Attorney fees are only available under the Back Pay Act pursuant to the CSRA amendments providing for the recovery of attorney fees. If an agency employee avails himself of the relief provided by the CSRA for the purpose of recovering attorney fees, he also must subject himself to the potential restriction of the CSRA Savings Provision. Here, Oliveira’s attempt simultaneously to benefit from the CSRA provision for recovery of attorney fees while side-stepping the CSRA Savings Provision must fail. Absent provision otherwise in the CSRA, that act, if applied at all, must be applied as a whole.
 

 B.
 
 Attorney Fees and Expenses Under the Equal Access to Justice Act.
 

 The EAJA
 
 [16]
 
 provides for the award of attorney fees as follows:
 

 (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys * * * to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 

 In addition, the EAJA provides for the award of fees and other expenses as follows: .
 

 (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses * * * incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 

 Limited guidance is provided by the EAJA as to the scope of costs which may be included as “fees and other expenses”:
 

 (A) “fees and other expenses” includes [sic] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party’s case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)[.]
 

 The Claims Court determined that the EAJA was available to Oliveira as a basis upon which to recover attorney fees and legal expenses. However, the Claims Court, as an exercise of its discretion, concluded that Oliveira was not entitled to recover attorney fees and legal expenses incurred either in the district court or in the Eleventh Circuit since such an award would be unreasonable in view of the lack of jurisdiction on the part of these forums. In addition, the Claims Court concluded, as a matter of law, that recovery could not be awarded to Oliveira for any legal expenses that are characterized as those ordinarily arising in the course of providing legal services. After a careful and thorough review of the entire record as a whole, we must conclude that the Claims Court did not abuse its discretion as to the amount of attorney fees it awarded Oliveira. However, we hold that the Claims Court erred in its decision not to award Oliveira legal expenses because its decision was based upon a clear mistake of law in its interpretation of the EAJA.
 

 
 *742
 
 Our review of a trial court’s award of attorney fees and legal expenses is limited to determining whether the lower court has committed error. Error may be established by showing that the trial court either made an error of law, a clear error of judgment, or exercised its discretion on factual findings that were clearly erroneous.
 
 [17]
 
 A factual finding, upon which a trial court exercises its discretion in the award of attorney fees and expenses, is “clearly erroneous” only when, although there is evidence in the record to support it, the reviewing court on the entire record is left with the “definite and firm conviction” that a mistake has been committed.
 
 [18]
 

 Oliveira argues first that the Claims Court abused its discretion by not awarding attorney fees for representation in the district court or in the Eleventh Circuit. Oliveira bases this argument on his contention that, because the issue of his improper discharge existed throughout the full extent of his judicial proceedings, the legal preparation on this issue prior to the transfer of Oliveira’s case by the Eleventh Circuit to this court significantly contributed to the legal preparation on this same issue subsequent to the transfer to this court by the Eleventh Circuit of Oliveira’s case. The Claims Court, as grounds for not awarding attorney fees for representation prior to the transfer of Oliveira’s case from the Eleventh Circuit to this court, reasoned that, because neither the district court nor the Eleventh Circuit had jurisdiction over Oliveira’s cause of action, representation in these forums was not reasonably devoted to Oliveira’s case. We cannot hold that this determination by the Claims Court was an abuse of discretion.
 

 The EAJA specifically requires, as a basis for an award of attorney fees and other expenses, that the action be brought before a “court having jurisdiction.”
 
 [19]
 
 In view of this language, we cannot hold that the Claims Court abused its discretion in not awarding attorney fees and other expenses for representation before the district court and the Eleventh Circuit when neither forum had jurisdiction over the matter before it.
 

 Oliveira further argues that the Claims Court erred in awarding attorney fees pursuant to the EAJA at the statutory rate of $75 per hour. Oliveira asserts that he was entitled to an increase in the statutory hourly rate because of the increase in the Consumer Price Index from the time Oliveira’s case was first initiated in the district court, February 20, 1980, until the Claims Court awarded attorney fees, October 10, 1986. The Claims Court, in rejecting this argument, noted that the legal work for which Oliveira was awarded attorney fees began when Oliveira’s case was first transferred from the Eleventh Circuit to us on June 18, 1984, and concluded that the delay in Oliveira receiving attorney fees did not justify the Claims Court to adjust, for inflation, the statutory hourly rate. We hold that the Claims Court’s conclusion is not an abuse of discretion.
 

 The Claims Court correctly recognized that it had discretion to adjust upward the statutory hourly rate for attorney fee awards pursuant to the EAJA.
 
 [20]
 
 One significant factor that courts have considered in evaluating a prevailing party’s request for an increase in the $75 statutory hourly rate set forth by the EAJA is whether the length of time that a prevailing party has been litigating the cause of action is such that the statutory rate must be adjusted for inflation.
 
 [21]
 
 Nevertheless, such an increase is not automatic. Although litigation delays of 4 to 5 years have been considered by courts to provide a basis to
 
 *743
 
 increase the statutory attorney fees rate,
 
 [22]
 
 it is recognized that a minimal delay may properly be ignored.
 
 [23]
 

 Here, the Claims Court determined that Oliveira only may recover attorney fees and legal expenses, if at all, for representation subsequent to the transfer by the Eleventh Circuit to this court of Oliveira’s case. The amount of time that elapsed between the time Oliveira began work for which the Claims Court awarded compensation, June 1984, and the time he was awarded recovery, October 1986, was a little over 2 years. Such a delay was not considered by the Claims Court to be sufficient to justify an increase in the statutory hourly rate to compensate for inflation and the increase in the Consumer Price Index. We hold this determination not to be an abuse of discretion.
 

 Finally, Oliveira argues that the Claims Court erred by denying Oliveira miscellaneous legal expenses, which expenses were incurred by Oliveira while pursuing his cause of action both for reinstatement to his warehouseman position and for back pay. These expenses included: photocopying; printing and binding of briefs; use of telephone, postal, and overnight delivery services; and, admission to practice and securing certificates of good standing in the judicial forums with proper jurisdiction over this case. The Claims Court, characterizing these expenses as those ordinarily arising in the course of providing legal services, concluded that the pertinent statutory language of the EAJA and the case law interpretations of the statutory language did not provide recovery for such expenses. This interpretation of the EAJA is plainly wrong. Notwithstanding the briefing of the parties on appeal before us, we must reverse the Claims Court’s determination that Oliveira is not entitled to recover for legal expenses incurred as a result of pursuing his cause of action from the time his case was transferred from the Eleventh Circuit to us. We remand this case to the Claims Court in order that it may exercise its discretion in view of the proper interpretation of the EAJA to determine, on the basis of the established record as a whole, whether Oliveira may be awarded recovery of expenses pursuant to the EAJA.
 

 The Claims Court, in denying Oliveira recovery of legal expenses, stated the following:
 
 [24]
 

 [T]he language of 28 U.S.C. § 2412(d)(2)(A) defining expenses
 
 does not seem to allow
 
 the court to make an award covering the other items for which the plaintiff seeks reimbursement. The statutory provision just cited, as examples of reimbursable expenses, mentions the cost of hiring expert witnesses and the cost of a study or report needed for the preparation of a party’s case. These seem to be exceptional expenses that do not arise as a matter of course in providing legal services. In contrast, expenses for which the plaintiff seeks reimbursement, such as the cost of printing and binding briefs, and travel, telephone, and postage expenses, are expenses ordinarily arising in the course of providing legal services. Consequently, they do not appear to fall within the scope of reimbursable expenses under the EAJA. In particular, it seems to be well established that courts
 
 will not
 
 reimburse parties for such items as travel, telephone, and postage expenses. [Citations omitted.] [Emphasis supplied.]
 

 This language used by the Claims Court makes it apparent to us that the Claims Court felt itself bound by the EAJA, as a matter of law, to deny Oliveira recovery of legal expenses ordinarily arising in the course of providing legal services. This interpretation is wrong. We hold that the Claims Court committed error, as a matter of law, by basing its decision not to award
 
 *744
 
 Oliveira legal expenses on an erroneous interpretation of the EAJA.
 

 The EAJA provides for recovery by a prevailing party in any civil action brought by or against the United States of reasonable attorney fees and legal expenses incurred in the pursuit of the cause of action.
 
 [25]
 
 Although the EAJA provides examples, set forth in 28 U.S.C. § 2412(d)(2)(A), of legal expenses for which recovery may be granted,
 
 [26]
 
 this is not an exclusive listing. We interpret 28 U.S.C. § 2412 to mean that the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried.
 
 [27]
 
 The quantum and method of proof of each allowable expense is discretionary with the trial court. In contrast, expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court, or which expenses the court finds to be unreasonable or unnecessary in the pending litigation, cannot be awarded under the EAJA. Thus, expenses incurred in gaining admission to practice before the court with proper jurisdiction could not be awarded under the EAJA.
 

 Recovery of expenses pursuant to the EAJA does not turn on whether an expense is characterized,
 
 as a matter of law,
 
 as an “exceptional expense” or, in contrast, as an “expense ordinarily arising in the course of providing legal services.” Rather, the Claims Court must use its discretion, in view of the record before it, to determine whether a specific expense may be recovered by the agency employee. We do not address the question whether, in view of the established record as a whole, Oliveira may recover pursuant to the EAJA any of the particular expenses that he seeks. We merely hold that the Claims Court, in refusing to award expenses to Oliveira, committed a clear error of law by erroneously interpreting the EAJA.
 

 CONCLUSION
 

 In view of the foregoing, we hold that the Claims Court correctly determined that the Back Pay Act was not available to Oliveira as a basis to recover attorney fees. We further hold that the Claims Court did not abuse its discretion by limiting its consideration of recovery to Oliveira pursuant to the EAJA for the period subsequent to when this ease first was transferred to us from the Eleventh Circuit. Finally, however, we hold that the Claims Court erred, as a matter of law, in interpreting the EAJA as not allowing for the recovery of expenses ordinarily arising in the course of providing legal services. On this issue, we reverse and remand to the Claims Court in order that it may exercise its discretion, in view of the proper interpretation of the EAJA, on Oliveira’s claim for expenses.
 

 AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
 

 [1]
 

 . 28 U.S.C. § 2412 (1982).
 

 [2]
 

 . 5 U.S.C. § 5596 (1982).
 

 [3]
 

 . Circumstances surrounding Oliveira’s dismissal from his position, not critical to this appeal, are discussed in the "Order on Plaintiffs Motion for Attorney Fees and Expenses” of the Claims Court upon which this appeal is based.
 
 Oliveira v. United States,
 
 11 Cl.Ct. 101 (1986).
 

 [4]
 

 . 5 U.S.C. §§ 701-706.
 

 [5]
 

 .
 
 Oliveira v. United States,
 
 No. 80-470-Civ-JE (S.D.Fla. Nov. 18, 1982).
 

 [6]
 

 .
 
 Oliveira v. United States,
 
 734 F.2d 760, 761-62 (11th Cir.1984).
 

 [7]
 

 .
 
 Oliveira v. United States,
 
 [765 F.2d 155 (table) ] No. 84-1375, slip op. at 2 (Fed.Cir. Jan. 14, 1985). (unpub.).
 

 [8]
 

 . 5 U.S.C. § 5596(b)(l)(A)(ii).
 

 [9]
 

 . Pub.L. No. 95-454, § 902(b), 92 Stat. 1224 (codified at 5 U.S.C. § 1101 note).
 

 [10]
 

 .
 
 Wilson v. Turnage,
 
 791 F.2d 151 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).
 

 [11]
 

 . 5 C.F.R. § 1201.191(b) (1986).
 

 [12]
 

 .
 
 See, e.g., Speros v. United States,
 
 8 Cl.Ct. 422 (1985);
 
 Benton v. United States, 6
 
 Cl.Ct. 781 (1984).
 

 [13]
 

 . 28 U.S.C. § 2501 (1982).
 

 [14]
 

 .
 
 See, e.g., Frommhagen v. United States,
 
 573 F.2d 52 (Ct.Cl.1978),
 
 cert. denied,
 
 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457,
 
 reh’g denied,
 
 441 U.S. 917, 99 S.Ct. 2019, 60 L.Ed.2d 390 (1979);
 
 Brundage v. United States,
 
 504 F.2d 1382 (Ct.Cl.1974), ce
 
 rt. denied,
 
 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975);
 
 Grisham v. United States,
 
 392 F.2d 980 (Ct.Cl.),
 
 cert. denied,
 
 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968).
 

 [15]
 

 .
 
 See generally Alpert v. United States,
 
 161 Ct.Cl. 810, 820-21 (1963) (citing extensively cases in which the doctrine of laches was applied to bar recovery for a Government employee’s claim of improper discharge).
 

 [16]
 

 . 28 U.S.C. § 2412.
 

 [17]
 

 .
 
 See, e.g., TWM Mfg. Co. v. Dura Corp.,
 
 789 F.2d 895, 898 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).
 

 [18]
 

 .
 
 See, e.g., United States
 
 v.
 
 United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746,
 
 reh'g denied,
 
 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948).
 

 [19]
 

 . 28 U.S.C. § 2412(b).
 

 [20]
 

 .
 
 See, e.g., Chipman v. Secretary of Health & Human Servs.,
 
 781 F.2d 545, 547 (6th Cir.1986).
 

 [21]
 

 .
 
 Id.
 

 [22]
 

 .
 
 See Crumbaker v. MSPB,
 
 781 F.2d 191, 196 (Fed.Cir.1986) (affirming an upward adjustment in statutory rate in view of a 5-year delay);
 
 Hirschey v. FERC,
 
 777 F.2d 1, 5 (D.C.Cir.1985) (affirming an upward adjustment in statutory rate in view of a 4-year delay).
 

 [23]
 

 .
 
 See National Ass'n of Concerned Veterans v. Secretary of Defense,
 
 675 F.2d 1319, 1328 (D.C.Cir.1982).
 

 [24]
 

 .
 
 Oliveira,
 
 11 Cl.Ct. 101, 109.
 

 [25]
 

 . 28 U.S.C. § 2412(b).
 

 [26]
 

 .
 
 Id.
 
 § 2412(d)(2)(A).
 

 [27]
 

 .
 
 See International Woodworkers of Am., Local 3-98 v. Donovan,
 
 792 F.2d 762, 767 (9th Cir.1986).