R.C. CONSTRUCTION CO., INC., Charles M. Powers, and John H. Powers, A Joint Venture, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 94–220C.

United States Court of Federal Claims.

Oct. 14, 1998.

David W. Mockbee, Jackson, Mississippi, for plaintiff.

Brian S. Smith, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director Kirk T. Manhardt, U.S. Department of Justice, Washington, D.C., and Major Rich Gross, U.S. Army, Arlington, Virginia.

## ORDER ON APPLICATION FOR ATTORNEYS' FEES

BRUGGINK, Judge.

On April 8, 1998, the Clerk entered judgment in favor of plaintiff in the amount of $1,191,639.24, based on the court's order of April 3, 1998. Pending is plaintiff's application for attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (1994). Petitioner seeks $174,681.25 in attorneys' fees, $6.50 in study costs, $12,514.05 in expert witness fees, and $43,902.89 in other expenses. In addition, plaintiff sponsors an EAJA application on behalf of a subcontractor, IHP Industrial, Inc. ("IHP"), in the total amount of $43,-647.95.

Defendant does not question the entitlement of plaintiff to a recovery under the EAJA. It concedes that plaintiff is a prevailing party, that it is eligible as a small corporation to recoup its fees and its expenses, and it does not assert special circumstances that would make a recovery unjust. It does not object, therefore, to the award of $174,-681.25 in attorneys' fees incurred by plaintiff. It does, however, raise two other types of objections.

The first is that there can be no EAJA recovery for the independent application of IHP. It points to the fact that the only plaintiff in the suit is the joint venture composed of R.C. Construction Co., Charles M. Powers, and John H. Powers ("R.C. Construction").

IHP responds that it "would be contrary to common sense reasoning to permit the Government to act in an unreasonable, frivolous, and unjustifiable manner to a subcontractor, and then say, 'since you can't sue me directly because you only have a "pass-through" claim," you are precluded from recovery of attorneys' fees and costs resulting from my improper action.'" Pl.'s Reply of Sept. 14, 1998, Ex. A, at 3. Unfortunately, as the court has had occasion to observe in the past, common sense and suits against the sovereign often seem to be only nodding acquaintances. *Cf. Skoglund v. United States,* 230 Ct.Cl. 833, 834 (1982).

Pass-through claims, i.e., those subcontractor claims sponsored by the prime contractor, are an accommodation of convenience to what would otherwise be the rule requiring direct privity between the Government and a claimant in court. *See Severin v. United States,* 99 Ct.Cl. 435, 442–44 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944) (denying a pass-through claim because a clause in the subcontract exculpated the contractor from liability to the subcontractor arising from government actions but recognizing the validity of such a claim absent the exculpatory clause); *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984) (permitting a subcontractor to prosecute its claim "through, and with the consent and cooperation of, the prime, and in the prime's name"). What the prime is advancing is a claim against it by the subcontractor. There is an outstanding liability between the two, in other words. In passing through such a claim, moreover, it is essential that the formality of a single nominal claimant with privity be maintained. It is thus only the prime contractor which can be named as a party. *See Erickson,* 731 F.2d at 814.

IHP is not a party to this lawsuit and it did not become a party when the court permitted

its attorney to appear for the limited purpose of examining witnesses and making argument to the court during trial. *See id.* ("Prime contractors may turn over part of their briefing space, or part of their argument time to representatives of subcontractors, but this, when it occurs, is a private arrangement among interested parties which may not add to the jurisdiction of the court, or the burdens upon it."). The court permitted that appearance at the request of plaintiff and without objection from the Government simply as an expedient, for the same reason that it routinely allows more than just the counsel of record to participate at trial.

It is true that the definition of "party" in the EAJA would theoretically embrace IHP. The term is defined there as "an individual whose net worth did not exceed $2,000,000 ... or any owner of an unincorporated business, or any partnership, corporation ... or organization, the net worth of which did not exceed $7,000,000 ... and which had not more than 500 employees at the time the civil action was filed...." 28 U.S.C. § 2412(d)(2)(B) (1994). This definition, however, is already subject to the limitations elsewhere in the EAJA that the suit be a "civil action ... brought by or against the United States," *id.* § 2412(d)(1)(A), which includes "an appeal by a party ... from a decision of a contracting officer rendered pursuant to ... a contract with the government...." *Id.* § 2412(d)(2)(E). The concept of "party" presupposes the existence of a suit that is properly before this court. The EAJA definition of "party" is thus merely a further limitation on eligibility—based on net worth and, in the case of corporations, number of employees—for entities which are already properly plaintiffs in a suit. In this case, because IHP is not in privity with the Government, the only entity which is a party is the prime contractor, R.C. Construction. *See Southwest Marine v. United States,* 43 F.3d 420, 422 (9th Cir.1994) ("*Southwest Marine II* "); *Southwest Marine, Inc.,* 93–1

B.C.A. (CCH) ¶ 25,225 at 125,641, 1992 WL 173869 (ASBCA 1992) ("*Southwest Marine I* "); *Teton Constr. Co.,* 87–2 B.C.A. (CCH) ¶ 19,766 at 100,016–17, 1987 WL 40782 (ASBCA 1987); *cf. Erickson,* 731 F.2d at 814 (stating that "only the prime contractor may be the appellant").

The court holds, moreover, that the EAJA does not authorize the court to award R.C. Construction, the prevailing party in this action, legal fees and expenses incurred by its subcontractor in litigating the pass-through claim. Section 2412(d)(1)(A) explicitly provides that "a court shall award to a prevailing party ... fees and expenses ... *incurred by that party* ...." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Unfortunately, " '[n]either EAJA nor the legislative history provides a definition of the word "incur." ' " Ed A. *Wilson, Inc. v. General Services Admin.,* 126 F.3d 1406, 1408 (Fed.Cir.1997) (quoting *SEC v. Comserv Corp.,* 908 F.2d 1407, 1413 (8th Cir.1990)). In *Wilson,* however, the Federal Circuit presented a thorough analysis of the meaning of "incur" in the context of the administrative agency EAJA, 5 U.S.C. § 504(a)(1) (1994).[1] The court rejected the definition of "incur" adopted by the General Services Board of Contract Appeals ("GSBCA")—which the court restated as "fees and expenses are incurred when the prevailing party is either liable for, or subject to paying, them"—as too narrow an interpretation of the statutory language. *Id.* at 1409. In so doing, the court cautioned against a strict literal reading of the statute, noting that "literalness may strangle meaning." *Id.* (quoting *Lynch v. Overholser,* 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962)). After reviewing precedent from the Federal Circuit and other federal appellate courts, the court identified three bases for the recovery of attorneys' fees by a prevailing party. First, under the literal interpretation of "incur" followed by the GSBCA, fees are incurred if the party has an obligation to pay counsel. *See id.*[2] Second,

---

1. 5 U.S.C. § 504(a)(1) closely mirrors 28 U.S.C. § 2812(d)(1)(A). It provides: "An agency that conducts an adversary adjudication shall award, to a prevailing party ..., fees and other expenses incurred by that party in connection with the proceeding...." 5 U.S.C. § 504(a)(1).

2. *See also Comserv,* 908 F.2d at 1414–15 (noting that where a third party was contractually obligated to pay the petitioner's attorneys' fees, to hold that the petitioner " 'incurred' such fees is too turn the word upside down"); *Wall Indus., Inc. v. United States,* 15 Cl.Ct. 796, 803 (1988),

" '[t]he presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards.' " *Id.* (quoting *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir. 1977)).[3]  *Finally, the court noted that "attorney fees are incurred by a litigant 'if they are incurred in his behalf, even though he does not pay them,' " citing numerous cases where the plaintiff was represented by union counsel and was under no obligation to pay the attorney. Id. (quoting Goodrich v. Department of the Navy,* 733 F.2d 1578, 1579 (Fed.Cir.1984)); see also *Comserv,* 908 F.2d at 1415 (recognizing exception for pro bono representation).

The prevailing party in *Wilson* was a construction contractor.  However, the appeal before the GSBCA was conducted under the exclusive direction and control of Wilson's insurer, under Wilson's name. *See Wilson,* 126 F.3d at 1408.  The insurer hired counsel to represent Wilson and paid all legal fees and expenses. *See id.*  After prevailing on the appeal, Wilson submitted an application to recover the monies expended on legal fees and expenses by its insurer. *See id.*  Although Wilson had no obligation to pay its insurers' legal costs, the Federal Circuit held that it was entitled to recover these fees and expenses under the EAJA in accordance with the second and third bases recited above. Regarding the former, the court noted that an attorney-client relationship existed between Wilson and counsel hired by the insurer, citing precedent holding that an attorney hired by an insurance company to represent the insured "owes his allegiance, not to the insurance company that retained him, but to the insured." *Id.* at 1409 (quoting *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 108 (2d Cir. 1991)).  Regarding the latter, the Federal Circuit noted the close resemblance between the facts before the court, and *Goodrich* and the other union cases:

> In both, the litigant (either the union member or the insured) pays a third party (the union or the insurer) for certain benefits. Among these benefits is legal representation for which the litigant will incur no additional obligation of payment to counsel. In this regard, both the union employee and the insured can be viewed as having incurred legal fees insofar as they have paid for legal services in advance as a component of the union dues or insurance premiums.

*Id.* at 1409–10.  Thus, the court concluded that Wilson had incurred the attorneys' fees under either theory. *See id.* at 1410.

Although the arrangement between the plaintiff and insurer in *Wilson* bears a resemblance to the pass-through arrangement at issue in this case, there are several key distinctions which bar recovery here.  First, no attorney-client relationship can be inferred between R.C. Construction and IHP's counsel.  IHP's counsel acted on behalf of IHP, and owed his allegiance entirely to IHP, not R.C. Construction.  Second, no pre-paid legal services arrangement existed between R.C. Construction and IHP equivalent to the arrangement between an insured party and her insurer.  The subcontract did not provide that IHP would direct and control any litigation arising out of the contract in general, or the subcontract in particular. This is evident from the fact that R.C. Construction directly incurred $174,681.25 in attorneys' fees in this dispute, separate and apart from the legal fees incurred by IHP. In addition, there is no suggestion that R.C. Construction is under a legal obligation to pay IHP's legal fees under the terms of the subcontract.  Therefore, under the interpretation of "incurred" stated by the Federal Circuit in *Wilson,* the plaintiff in this case did not incur the $43,647.95 in legal fees expended by IHP.

Only one federal court appears to have addressed the issue of whether a request for attorneys' fees under the EAJA may be submitted by a prime contractor on behalf of the

---

*aff'd without opinion,* 883 F.2d 1027 (Fed.Cir. 1989) (stating that "the purpose of the EAJA [is] to benefit *only* the prevailing party who actually absorbed the financial burden of the litigation").

**3.** The court recited numerous federal circuit court decisions that have permitted recovery of attorneys' fees when the prevailing party was represented by its insurance company, a legal service corporation, or counsel appearing pro bono. *See Wilson,* 126 F.3d at 1409.

subcontractor. In *Southwest Marine II*, the Ninth Circuit affirmed a district court decision denying the subcontractor's claim for EAJA fees and expenses. *See* 43 F.3d at 420. The district court action was itself an appeal of an Armed Services Board of Contract Appeals ("ASBCA") decision denying the subcontractor's petition for EAJA fees and expenses. *See id.* at 421; *Southwest Marine I*, 93–1 B.C.A. ¶ 25,225, 1992 WL 173869.[4] Although opinions of the Ninth Circuit are not binding in this circuit, the court feels that it should address the *Southwest Marine II* opinion to the extent that it may appear to be inconsistent with the holding of this opinion.

In *Southwest Marine II*, the Ninth Circuit in essence affirmed the ASBCA's holding in *Southwest Marine I*. In that decision, the Board held that the prime contractor, Southwest Marine, was the only party in the underlying pass-through action before the Board, and thus only Southwest Marine could potentially recover attorneys' fees under the EAJA. *See Southwest Marine I*, 93–1 B.C.A. at 125,641 (citing *Erickson, Teton,* and other opinions that recite the *Severin* doctrine). However, the prime contractor did not meet the EAJA employee and net worth criteria set forth in 5 U.S.C. § 504(b)(1)(B) (1994).[5] *See id.* at 125,640. The Board thus denied the petition. *See id.* at 125,642.

The Ninth Circuit reached the same conclusion following an identical rationale. The court held that Southwest Marine, not the subcontractor, was the prevailing "party" in the underlying appeal. *See Southwest Marine II*, 43 F.3d at 422–23 (citing *Teton* for the proposition that a subcontractor does not have privity to use a direct claim against the government). Furthermore, Southwest Marine could not recover as a prevailing party because it did not meet the size and net worth criteria specified in the EAJA. *See id.* at 422.

The court did not, therefore, have occasion to address whether Southwest Marine would have recovered attorneys' fees expended by the subcontractor in litigating the pass-through claim if the net worth and employee criteria had been satisfied. The limited holding of *Southwest Marine II* supports this court's conclusion above that the prime contractor is the sole party in a pass-through action and recovery under the EAJA is dependent upon whether the prime contractor, standing alone, meets the requirements for the recovery of attorneys' fees and expenses set out in the statute. These requirements include the size and net worth criteria in section 2412(d)(2)(B) or 5 U.S.C. § 504(b)(1)(B), and the requirement that the fees and expenses were "incurred" by the prime contractor.

The Ninth Circuit's decision does imply, however, that the court would have allowed Southwest Marine to recover if it had met the net worth and employee criteria: the opinion cites with apparent approval a number of decisions issued by several Boards of Contract Appeals which appear to accept that attorneys' fees expended by a subcontractor are fees incurred by the prime contractor. *See Southwest Marine II*, 43 F.3d at 422 (citing *Appeal of Sentry Ins. Co.*, 93–3 B.C.A. (CCH) ¶ 26,124, 1993 WL 186040 (V.A.B.C.A.1993), *Southwest Marine I, Teton,* and *T.H. Taylor, Inc.*, 86–3 B.C.A. (CCH) ¶ 19,257 (ASBCA 1986)). In addition, the court was careful to distinguish the case before it from *T.H. Taylor,* an ASBCA decision awarding EAJA attorneys' fees to a prime contractor that met the size and net worth criteria. *See id.* at 422 n. 4. Because *T.H. Taylor,* and arguably all of the Board decisions cited above, adopted a position contrary to the opinion expressed here, the court

---

4. The dispute arose after the subcontractor's pass-through claim for an equitable adjustment was denied by the contracting officer. *See Southwest Marine II,* 43 F.3d at 421. The subcontractor appealed the decision to the ASBCA and prevailed. *See id.* The subcontractor then filed a petition with the ASBCA for attorneys' fees and costs under the EAJA. *See id.*

5. The language of 5 U.S.C. § 504(b)(1)(B) is virtually identical to that of 28 U.S.C. § 2412(d)(2)(B). The former applies to adversary adjudications before federal agencies; the latter applies to judicial actions.

will address those decisions and the line of analysis they present.

*T.H. Taylor* was apparently the first ASBCA decision to address the issue of whether a prime contractor may recover attorneys' fees incurred by a subcontractor to litigate a pass-through claim. The subcontractor prevailed on two contract claims that were filed in the name of the prime contractor. *See T.H. Taylor*, 86–3 B.C.A. at 97,390. The Board held that T.H. Taylor could recover attorneys' fees and expenses because it was a prevailing party that met the EAJA size and net worth eligibility criteria. *See id.* at 97,391. Of particular note here, the Board held that the prime contractor had incurred the fees and expenses even though the subcontractor prosecuted the appeals:

> It is also consistent with the purpose of the EAJA to consider, as we do here, that when both a prime contractor and its subcontractor meet the qualifying size and net worth standards, the fees and expenses actually incurred by the subcontractor in bringing an appeal in the name of the prime are also incurred by the prime contractor as a "party" for purposes of an award of fees and expenses . . . .

*Id.* The ASBCA did not cite any authority for this conclusion, or provide any further analysis to support the conclusion.

In subsequent decisions, the ASBCA and the Interior Board of Contract Appeals accepted the analysis presented in *T.H. Taylor* without further scrutiny. *See SCL Materials & Equip. Co.*, IBCA No. 3866–97A, 1998 WL 646682, at *5–6 (I.B.C.A. Sept. 18, 1998); *Teton*, 87–2 B.C.A. at 100,016. However, in neither case was the ASBCA's holding in *T.H. Taylor* squarely before either Board. In *SCL*, the subcontractor filed a petition directly rather than in the name of its prime contractor, and the Board rejected the petition on the basis of lack of privity. *See SCL*, 1998 WL 646682, at *6, *12. In *Teton*, the ASBCA rejected the pass-through application for attorneys' fees and expenses on another basis—the prime contractor did not

meet the EAJA size and net worth criteria. *See* 87–2 B.C.A. at 100,016.[6]

Other Board decisions have implicitly approved *T.H. Taylor*. In *Jordan & Nobles Construction Co. v. General Services Administration*, 93–2 B.C.A. (CCH) ¶ 25,741, 1993 WL 18976 (GSBCA 1993), the GSBCA reached a conclusion consistent with *T.H. Taylor*, but without citing any precedent. The Board awarded attorneys' fees to a prime contractor that sponsored an application for legal fees and expenses incurred by its subcontractor. *See id.* at 128,042. In granting the application, the Board presented no authority to support its implicit assumption that the prime contractor had incurred these fees, as required by the EAJA. *See id.* In *Sentry Ins.*, which involved an EAJA application submitted by the contractor's surety in its own name, the Board, after citing the ASBCA's decisions denying EAJA petitions in *Teton* and *Southwest Marine I*, downplayed the "incurred" limitation of the statute by stating that "[i]t made no difference that the litigation fees and expenses were incurred by the subcontractors." *Sentry Ins.*, 93–3 B.C.A. at 129,869.

This court chooses to depart from the line of Board decisions cited above to the extent that they support the proposition that attorneys' fees incurred by a subcontractor are, without more, also de facto incurred by the prime contractor that is the named plaintiff in a pass-through claim. The court reiterates that neither the Ninth Circuit's opinion in *Southwest Marine II* nor the Board decisions cited above are binding upon this court. The court finds that this series of cases is founded upon one ASBCA decision that cited no precedent and provided only minimal analysis of the issue. Furthermore, these cases were all decided prior to the Federal Circuit's decision in *Wilson*, which provides a much more thorough analysis of the meaning of the term "incurred" in the EAJA. This court concludes that the interpretation of *Wilson* presented above, though

---

**6.** In several other decisions, the ASBCA has rejected pass-through applications for EAJA attorneys' fees because the prime contractor failed to meet, or prove that it met, the EAJA eligibility criteria, though without citing *T.H. Taylor*. *See General Ins. Co. of Am.*, 95–2 B.C.A. (CCH) ¶ 27,856, 1995 WL 447224 (ASBCA 1995); *Southwest Marine I*, 93–1 B.C.A. ¶ 25,225; *Finesilver Mfg. Co.*, 88–2 B.C.A. (CCH) ¶ 20,536, 1988 WL 44304 (ASBCA 1988).

directly at odds with the awards of attorneys' fees in *T.H. Taylor* and *Jordan & Nobles*, and perhaps indirectly at odds with the implicit rationale in the other cases cited, is a more reasonable interpretation of the EAJA requirement that attorneys' fees be incurred by the prevailing party.

■ The foregoing analysis is in accord with the dictates of the *Severin* doctrine, which the court holds is not broad enough to embrace a petition for legal fees and expenses incurred by the subcontractor simply in assisting the prime contractor to advance the pass-through claim. A fundamental tenet of the *Severin* doctrine is that a prime contractor may recover damages incurred by a subcontractor only if the prime is liable to the subcontractor for those damages. *See Gardner Displays Co. v. United States,* 171 Ct.Cl. 497, 346 F.2d 585, 587 (1965) (noting that "actual damage to the prime is a prerequisite to recovery ... for those subordinate to him"). This court holds that the *Severin* doctrine does not allow a prime contractor to recover under the EAJA attorneys' fees incurred by the subcontractor unless the prime is liable to the subcontractor for these fees. There is no occasion here to treat IHP's EAJA claim as a pre-existing liability of the prime to the subcontractor because there was no arrangement between plaintiff and IHP affixing such liability. The *Severin* doctrine thus prohibits recovery of IHP's attorneys' fees.

The Government's second objection is that plaintiff's application for expenses is duplicated by its application for costs pursuant to 28 U.S.C. § 1920 (1994), currently pending before the Clerk of the court.[7] Plaintiff concedes in its reply that there is substantial overlap between the two applications, prompted in part by some uncertainty about whether to apply under the EAJA or section 1920.

■ Section 2412(a)(1) provides that costs enumerated in section 1920 may be awarded to a prevailing party in litigation against the United States. *See* 28 U.S.C. § 2412(a)(1)

(1994). It explicitly excludes attorneys' fees and expenses, which are separately addressed in section 2412(d)(1)(A). Section 1920 specifically enumerates six categories of costs that may be awarded. The EAJA is less precise, referring only to "fees and other expenses" generally. *Id.* § 2412(d)(1)(A). The statute defines this phrase to "include[ ] reasonable expenses of expert witnesses, the reasonable cost of any study ... which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." *Id.* § 2412(d)(2)(A). Although this list is not exclusive, *see Oliveira v. United States,* 827 F.2d 735, 744 (Fed.Cir. 1987), recoverable expenses must be expenses of attorneys or experts, as opposed to expenses of the plaintiff generally. *See Wilson,* 126 F.3d at 1408 & n. 2 (affirming the GSBCA's denial of expenses incurred by plaintiff's employees); *KMS Fusion, Inc. v. United States,* 39 Fed.Cl. 593, 605 (1997) (denying claims for expenses incurred by plaintiff's fact witnesses); *cf. Oliveira,* 827 F.2d at 744 (stating that the EAJA "provides for recovery ... of reasonable attorney fees and *legal expenses* ") (emphasis added). In addition, another practical difference between the two sections is that costs allowable under section 1920 are subject to a more discretionary award process, whereas attorneys' fees and expenses *must* be awarded if certain preconditions are met. *Compare* 28 U.S.C. § 2412(a)(1) ("costs ... may be awarded"), *with id.* § 2412(d)(1)(A) ("a court shall award ... fees and other expenses"); *see also Neal & Co. v. United States,* 121 F.3d 683, 686 (Fed.Cir.1997) ("[T]he permissive language applied to costs in section 2412(a)(1) carries more weight when contrasted with the imperative language applied to attorneys' fees and expenses in section 2412(d)(1)(A) of EAJA.").

■ Admittedly, the court has been less than consistent in characterizing certain administrative expenses of attorneys as either costs or expenses. For example, we have held that section 2412(d)(1)(A) permits recovery of copying, delivery services, travel, re-

search services, telephone, and postage costs, as well as other expenses routinely incurred by attorneys, assuming they are documented and reasonably necessary to prosecution of the claim. *See, e.g., Prowest Diversified, Inc. v. United States,* 40 Fed.Cl. 879, 888 (1998) (awarding copying, facsimile, messenger services, research services, and office services expenses); *KMS Fusion,* 39 Fed.Cl. at 605–06 (awarding expenses for copying, delivery services, and local travel); *PCI/RCI v. United States,* 37 Fed.Cl. 785, 791 (1997) (granting an application for computer research services, photocopying, postage, telephone, and travel expenses). There are also decisions holding that certain of these administrative items, such as telephone, mailing, and copying costs, are more properly claimed under section 1920. *See, e.g., Weaver–Bailey Contractors, Inc. v. United States,* 24 Cl.Ct. 576, 581 (1991) (holding that telephone, copying and postage expenses are more properly viewed as costs); *Griffin & Dickson v. United States,* 21 Cl.Ct. 1, 14 (1990) (stating that telephone, postage, messenger services, and clerical work expenses are more properly characterized as costs); *Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 140 (1988) (noting that copying should be categorized as a cost rather than as an expense).

The Federal Circuit has provided some guidance on the matter of expenses. In *Oliveira,* the court reversed the Claims Court's holding that the plaintiff could not recover expenses for photocopying, printing and binding briefs, telephone, postage, and overnight delivery services as "fees and expenses" under 28 U.S.C. § 2412(b). *See* 827 F.2d at 743. The Federal Circuit held: "We interpret 28 U.S.C. § 2412 to mean that the trial court ... may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial ..., which are those customarily charged to the client where the case is tried." *Id.* at 744; *see also Bennett v. Department of the Navy,* 699 F.2d 1140, 1143 (Fed.Cir.1983) ("The term 'expenses' is generally understood to include all the expenditures made by a litigant in connection with an action."). Although the court refrained from deciding whether the plaintiff could recover the expenses claimed, it did cite with approval a Ninth Circuit opinion that awarded telephone, postage, air courier, and attorney travel expenses under section 2412(b). *See Oliveira,* 827 F.2d at 744 & n. 27 (citing *International Woodworkers of Am. v. Donovan,* 792 F.2d 762, 767 (9th Cir.1985)). *Oliveira* thus appears to suggest that "fees and other expenses" in section 2412(d)(1)(A) should be interpreted broadly enough to include expenses claimed by the plaintiff in the case presently before the court.

In the present case, however, the issue is moot. The court has already directed an award of costs in favor of plaintiff and the Clerk has not ruled on the section 1920 application. To the extent overlapping expenses are allowed herein, they are removed *pro tanto* from the application for costs under section 1920. Accordingly, the court grants plaintiff the following as expenses under the EAJA: paralegal, research, printing, messenger, copying, telephone, and postage costs incurred by counsel, and travel expenses of attorneys and experts. Expenses are thus awarded in the amount of $38,975.67, broken out as follows: $6.50 for study; $12,514.05 for expert witness fees; $4,272.69 for travel expenses of counsel; $2,226.79 for telephone and postage expenses; $271.89 for services and supplies; $9,495.00 for paralegal services; $3,184.02 for printing; and $7,004.73 for copies. Remaining items, such as filing fees, witness fees, transcript costs, and travel, meals, and lodging costs of plaintiff or of fact witnesses, are left to be resolved by the Clerk.

Accordingly, the Clerk is directed to enter judgment for plaintiff in the amount of $213,656.92, consisting of fees in the amount of $174,681.25 and $38,975.67 for expenses.